**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:22-cv-22307-BB**

MARIA FERNANDA SOTO LEIGUE,
individually and on behalf of all
others similarly situated,

       Plaintiff,

v.

EVERGLADES COLLEGE, INC. d/b/a
KEISER UNIVERSITY,

       Defendant.

**CLASS ACTION**


**REQUEST FOR HEARING**

<u>**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**</u>

**EXHIBIT LIST**

| Exhibit | Description |
|---|---|
| **A** | Transcript of Deposition of Teri del Vecchio, Defendant's Corporate Representative, dated December 8, 2022 ("**del Vecchio Dep**.") |
| **B** | Transcript of Deposition of Christopher Coleman, Defendant's Corporate Representative, dated December 8, 2022 ("**Coleman Dep**.") |
| **C** | Transcript of Deposition of Cristina Caras, Defendant's Director of Admissions, dated January 17, 2023 ("**Caras Dep**.") |
| **D** | Transcript of Deposition of Ines Melendez, Defendant's Admissions Counselor, dated January 17, 2023 ("**Melendez Dep**.") |
| **E** | Transcript of Deposition of Shawn Bowen, Corporate Representative for Avisan Design Group, dated January 27, 2023 ("**Bowen Dep**.") |
| **F** | Transcript of Deposition of Gene McDonnell, Defendant's Vice Chancellor of High School Relations, dated January 19, 2023 ("**McDonnell Dep.**") |
| **G** | Transcript of Deposition of Maria Fernanda Soto Leigue, dated December 21, 2022 ("**Soto Leigue Dep**.") |
| **H** | Internal e-mail communications produced by Defendant:<br><br>    o  Keiser004257<br><br>    o  Keiser004457<br><br>    o  Keiser004480<br><br>    o  Keiser004600<br><br>    o  Keiser004673<br><br>    o  Keiser005010<br><br>    o  Keiser005020<br><br>    o  Keiser005058 |

| | | |
|---|---|---|
| **I** | Supplemental Declaration of Plaintiff's Expert, Aaron Woolfson, ("**Woolfson Decl.**"), including the following exhibits: |
| **J** | Resume of Law Firms Representing Plaintiff ("**Law Firm Resumes**") |

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION…………………………………………………………………...1

II.     BACKGROUND AND FACTS…………………………………………………..3

        A.      Defendant's Admissions Counselors Aggressively Solicit Consumers…………..4

        B.      Defendant Harassed Plaintiff and the Class Members Even After they Asked for Defendant to Stop its Text Messaging……………………………………………8

III.    ARGUMENT…………………………………………………………………...9

        A.      The Class is Adequately Defined……………………………………………..10

        B.      The Rule 23(a) Requirements are Satisfied……………………………………...11

                1.      The Class is Sufficiently Numerous……………………………………..11

                2.      There are Common Questions of Law and Fact…………………………12

                3.      Plaintiff's Claims are Typical…………………………………………13

                4.      Plaintiff and her Counsel are Adequate…………………………………14

        C.      The Rule 23(b)(3) Requirements are Satisfied…………………………………...15

                1.      Common Questions Predominate………………………………………...15

                2.      A Class Action is Superior……………………………………………17

## I.      INTRODUCTION

This putative class action alleges that Defendant Everglades College, Inc. d/b/a Keiser University violated the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059, as amended by Senate Bill No. 1120, by sending text messages to consumers who opted out of further communications.[1] In no uncertain terms, the FTSA provides: "A telephone solicitor or other person may not initiate an outbound telephone call, text message, or voicemail transmission to a consumer, business, or donor or potential donor who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound telephone call, text message, or voicemail transmission[.]" Fla. Stat. § 501.059(5).

Plaintiff now moves under Fed. R. Civ. P. 23(a) and 23(b)(3) to (1) certify a class; (2) to appoint Plaintiff as class representative; and (3) to appoint Plaintiff's counsel as Class Counsel. Plaintiffs moves to certify the following proposed Class (the "Class"):

> **All persons within Florida, (1) who were sent one or more text messages, (2) between July 1, 2021 through the date of filing the Complaint in this case, (3) after communicating to Defendant that they do not wish to receive future text messages, and (4) where those messages were tagged as "Message successfully delivered" within the TextLane transmission logs.**

"Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020). Defendant's blatant disregard of the FTSA has resulted in ███ unwanted text

---

[1] Plaintiff's First Amended Complaint also alleges that Defendant violated the FTSA by sending automated text messages to Florida residents without having prior express written consent. But Plaintiff has moved to sever and remand that claim, *see* ECF No. 67.

messages to ▮ Class members who had requested for Defendant to stop sending them text messages.

Unfortunately for the Class members, Defendant's lack of policies, training, and aggressive marketing resulted in the harassment for months, sometimes years. The following are a few examples of consumer complaints received by Defendant regarding its relentless solicitations:



---

[2] Keiser004257 (emphasis supplied)
[3] Keiser004457 (emphasis supplied)
[4] Keiser004480 (emphasis supplied)
[5] Keiser004600 (emphasis supplied)
[6] Keiser004673 (emphasis supplied)
[7] Keiser005010 (emphasis supplied)
[8] Keiser005020 (emphasis supplied)
[9] Keiser005058 (emphasis supplied)

As the Fourth Circuit recognized regarding FTSA's federal analog, the Telephone Consumer Protection Act ("TCPA"), these telemarketing statutes are "simple and administrable" provisions, the "obvious attempt [by Congress] to vindicate the public interest" through the statute's private enforcement provisions, and the overarching congressional intent "to allow consumers to bring their claims at modest personal expense" all combine to make the "claims amenable to class action resolution." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 663 (4th Cir. 2019). The same logic applies to the FTSA, which was patterned after the TCPA, but with much wider protections afforded to consumers.

For the reasons detailed below, Plaintiff respectfully submits that this Motion should be granted, the Class certified, Plaintiff appointed as Class representatives, and Plaintiff's counsel appointed as Class Counsel.

## II.  BACKGROUND AND FACTS



. del Vecchio Dep. at 28:5-11. ■ . *Id.* at 28:17–29:13. ■ . *Id.* at 26:23–27:3, 29:20–30:4. ■ . *Id.* 21:6-10. ■ . *Id.* at 32:1–23, 42:5–15; Caras Dep. at 20:25–21:20, 37:6–18. ■ . Melendez Dep. at

70:19–24, 71:12–16. █████████████████████████████████████████

████████████████████████████████████████████ del Vecchio Dep.

at 42:16–21. █████████████████████████████████████████████

████████. Melendez Dep. at 60:9–61:19. ███████████████████████

███████████████████████████████████████████████████████ *Id.*

at 59:3–10. ██████████████████████████████████████████████

██████████████████████████████. Caras Dep. at 8:15-19, 19:17–20:9.

### A.     Defendant's Admissions Counselors Aggressively Solicit Consumers

█████████████████████████████████████████████████

███████████████████████████████████████. del Vecchio Dep. at 7:8–12.

█████████████████████████████████████████████████

████████████████████████████████████████████████████.

*Id.* at 35:21–25. ████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████. *Id.* at 78:17-20, 79:11-23. █

███████████████████████████████████████████████████████

█████████████████████████████████████████████. *Id.* at 80:10

– 81:6 (emphasis supplied). ██████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████ *Id.* at 83:1-7. ████████████████████████

███████████████████████████████████████████████████████

███████████████████████. Caras Dep. at 17:5-15 (emphasis supplied).



. del Vecchio Dep. at 38:20–25.

Melendez Dep. at 13:12–14:11. In

*Id.* at 13:3–11, 23:19–24:9.

Caras Dep. at 39:17–40:8.

. *See* Keiser004120; Bowen Dep. at 73:4-20.

. Coleman Dep. at 68:16–69:25.

. McDonnell Dep. at 38:3–39:6, 42:22–43:9.

. del Vecchio Dep. at 56:1–5.

. *Id.* at 40:11–41:3.

███████████████████████████████████ Melendez Dep. at

68:5–69:7.

Despite Defendant's claim that it is not engaged in telephone solicitations and that it is simply trying to provide prospects with the information they have requested, internal communications between Defendant's employees show the relentless solicitation of consumers, even when they hang up on Defendant's Admissions Counselors or tell them that they are not interested in Defendant's services. The following are a few examples of those internal communications:



Keiser004318.



Keiser004325.





Keiser005420.

       **B.**    <u>**Defendant Harassed Plaintiff and the Class Members Even After They Asked for Defendant to Stop its Text Messaging**</u>

███████████████████████████████████████████

████████████████████████████████████████. Coleman

Dep. at 94:10–19; del Vecchio Dep. at 20:12–21:6, Ex. 14 at No. 2. ████████████

███████████████████████████████████████. Coleman Dep.

at Ex. 12. ███████████████████████████████████████

███████████████████████████████████████████

████████. *Id.* On 9/23/21, ████████████████████████

██████████████████████████████████. *Id.*

███████████████████████████████████████████

███████████████████████████████. del Vecchio Dep. at 21:3-6, 22:16–23:3,

24:10–25:3. ██████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████



████████████████████████████████████████. Caras Dep. at 27:14–19, 30:8–

20, 32:13–21. ███████████████████████████████████████████

████████████████████████████████████████████. Melendez Dep.

at 22:7–11. ██████████████████████████████████████████

██████████████████████████████████. Bowen Dep. at 45:4–5, 60:11–18. ████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████. Bowen

Dep. at 59:11–60:6.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████, Bowen Dep. at 40:7–41:8, █████████████████████

██████████ █████████████████████████████████████████

████████████████████ Woolfson Decl. at ¶¶41, 61; Ex. 13.

## III.    ARGUMENT

All of the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3) are satisfied in this case.
And because of the small damages available to individual Class members, a class action is the
only realistic way that the hundreds of affected consumers will get their day in Court to
challenge Defendant's unwanted text messages.

---

[10] A "successfully delivered" disposition in the text log spreadsheet means that the message was
successfully delivered to the consumer. *Id*. at 46:2–10.

A.     **The Class is Adequately Defined**

The Eleventh Circuit held in a published opinion "that administrative feasibility is not a requirement for certification under Rule 23[,]" and it "limit[ed] ascertainability to its traditional scope: a proposed class is ascertainable if it is adequately defined such that its membership is capable of determination." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021). In other words, "[p]roof of administrative feasibility cannot be a precondition for certification." *Id*. The Eleventh Circuit further explained that,

> A class is "clearly ascertainable" if we are certain that its membership is "capable of being" determined. *Ascertain, Webster's New International Dictionary* (3d ed. 1993); *Ascertainable, Webster's New International Dictionary* (3d ed. 1993). But membership can be capable of determination without being capable of *convenient* determination. Administrative feasibility is not an inherent aspect of ascertainability.

*Id*. at 1303 (emphasis in original). This means that "the party seeking certification need not establish its ability to identify class members in a convenient or administratively feasible manner." *Rensel v. Centra Tech., Inc.*, 2 F.4th 1359, 1361 (11th Cir. 2021). To the extent administrative feasibility has any role, "[the district court] may consider administrative feasibility as part of the manageability criterion of Rule 23(b)(3)(D)." *Cherry*, 986 F.3d at 1304.

Moreover, a plaintiff is not "required to limit their proposed class to the one that is the easiest to figure out. '[N]either foreknowledge of a method of identification nor confirmation of its manageability says anything about the qualifications of the putative class representatives.'" *Harris v. Ga. Dep't of Corr.*, No. 5:18-cv-00365-TES, 2021 U.S. Dist. LEXIS 247124 (M.D. Ga. Dec. 28, 2021) (quoting *Cherry*, 986 F.3d at 1303). "A[t] this stage of the proceedings, Plaintiffs are only required to show that the class is 'not defined through

vague or subjective criteria[]' so that it is 'capable of being determined.'" *Harris*, 2021 U.S. Dist. LEXIS 247124, at *31 (quoting *Cherry*, 986 F.3d at 1302-03).

To "the extent that Defendant[] argue[s] that this class is not ascertainable because it requires individualistic determinations…the Court [should] find[] such an argument to be grounded in administrative feasibility concerns and not relevant to the ascertainability analysis." *Id*. at *32 (citing *McCullough v. City of Montgomery*, No. 2:15-cv-463-RCL, 2021 WL 20449900, at *11 (M.D. Ala. May 21, 2021) (noting that the argument that a class is not ascertainable if individual inquiries are necessary to determine class membership is simply a "repackag[ing of] the administrative feasibility test that Cherry rejected[]")).

The Class here is ascertainable because it is adequately defined such that class membership is capable of determination. Indeed, no element of the Class definition is vague or subjective. ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████. Coleman Dep. at 29:11–30:5. Accordingly, providing notice to Class members will be a simple administrative task that can be handled by a class administrator.

### B.   The Rule 23(a) Requirements are Satisfied

#### 1.   *The Class is Sufficiently Numerous*

To satisfy the numerosity requirement, Plaintiff must show that the Class is so numerous that "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs "seeking class certification do not need to know the 'precise number of class members,' but they 'must make reasonable estimates with support as to the size of the proposed class.'" *Rosenberg v. GEICO Gen. Ins. Co.*, No. 19-61422-CIV-CAN, 2021 U.S. Dist. LEXIS 210775, at *15 (S.D. Fla. Sep. 21, 2021). Although "[a] plaintiff must present some evidence

that the class to be certified will satisfy the numerosity requirement of Rule 23[,]" it need only "reasonably estimate[] a class larger than 40 members[,]" and need "not be able to produce a precise, uncontested number of class members." *Id*. Indeed, when evaluating numerosity a "court may make common sense assumptions[.]" *Barnes v. Air Line Pilots Ass'n, Int'l*, 310 F.R.D. 551, 557 (N.D. Ill. 2015).

The Class here satisfies the numerosity requirement as it contains at least 40 members.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████. Woolfson Decl. at ¶¶41, 61; Ex. 13. Thus, Defendant cannot reasonably dispute that the numerosity requirement is satisfied.

### 2.   There are Common Questions of Law and Fact

The test for commonality is whether the class claims present "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This test presents a "low hurdle." *Williams v. Mohawk Indus*., 568 F.3d 1350, 1356 (11th Cir. 2009). To satisfy it, Plaintiff need only show that the Class claims present "at least one issue whose resolution will affect all or a significant number of the putative class members," or that their claims "are susceptible to class-wide proof." *Id*. at 1355. In other words, "[t]he plaintiff's and class members' 'claims must depend upon a common contention' that is 'of such a nature that it is capable of classwide resolution-which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Wesley v. Snap Fin. LLC*, 339 F.R.D. 277, 291 (D. Utah 2021).

Commonality "'***does not require*** that all the questions of law and fact raised by the dispute be common,' or that the common questions of law or fact 'predominate' over individual issues." *Rothenberg*, 2021 U.S. Dist. LEXIS 210775 at *15 (emphasis added).

"What matters to class certification…is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.*, at *16.

Here, Plaintiff's claim against Defendant raises multiple common legal and factual issues capable of generating common answers, including: (1) whether Plaintiff and the Class members communicated to Defendant that they did not wish to receive text messages; (2) whether Defendant nevertheless continued to send text messages to Plaintiff and the Class members after the opt-out requests; (3) the total number of text messages Defendant sent in violation of section 501.059(5); (4) whether Defendant's conduct was knowing and willful such that the Court should award treble damages pursuant to section 501.059(10)(b); and (5) the total amount of damages the Court should award to Plaintiff and the Class members.

Thus, commonality is satisfied in a case such as this alleging violations of the FTSA, which is patterned after the analogous TCPA, as other courts have recognized. *See, e.g.*, *Mohamed v. Off Lease Only, Inc.*, 320 F.R.D. 301, 313 (S.D. Fla. 2017) (commonality satisfied in TCPA class action where "[t]he entire case revolves around an alleged common course of conduct performed by" defendant and its vendor); *C-Mart, Inc. v. Metro. Life Ins. Co.*, 299 F.R.D. 679, 690 (S.D. Fla. 2014) (holding in TCPA class action that "the legal questions that the instant matter presents will be common to all class members"); Ma*nno v. Healthcare Rev. Recovery Grp., LLC*, 289 F.R.D. 674, 686 (S.D. Fla. 2013) (finding consent defense to be common where all class members were subject to the same TCPA related disclosures).

### 3.    *Plaintiff's Claims are Typical*

The typicality requirement of Rule 23 requires that the claims of the representative plaintiffs be typical of the claims of the class. *See* Fed. R. Civ. P. 23(a)(3). "'[T]ypicality

measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large.'" *Rosenberg*, 2021 U.S. Dist. LEXIS 210775, at*17. Like commonality, typicality is not a demanding test." *Id*. at *18. Notably, "[c]lass members' claims need not be identical to satisfy the typicality requirement[.]" *Ault v. Walt Disney World Co*., 692 F.3d 1212, 1216 (11th Cir. 2012).

In this case, Plaintiff and the Class members were subjected to the same unwanted text messages and their claims rely on the same legal theory: that Defendant violated the FTSA by sending text messages to individuals who had requested for the messages to stop. As such, Plaintiff and the Class members will need to prove the same elements to establish Defendant's liability under the FTSA, and Plaintiff and the Class members seek the same statutory relief. Thus, the typicality requirement is satisfied. *See, e.g.*, *Vance v. DIRECTV, LLC*, No. 5:17-CV-179, 2022 U.S. Dist. LEXIS 140518, at *22 (N.D.W. Va. Aug. 1, 2022). ("Here, the named plaintiffs, like all purported class members, allegedly received telemarketing calls form AC1 on numbers listed on the Do-Not-Call Registry. The named plaintiffs must prove the same elements as every class member. Moreover, the named plaintiffs seek the same statutory relief as the putative class. By proving their own legal claims, plaintiffs may also prove the class claims. Accordingly, typicality is satisfied.").

### 4.    *Plaintiff and her Counsel are Adequate*

Representative plaintiffs must also show that they will "fairly and adequately protect the interests of this class." Fed. R. Civ. P. 23(a)(4). "The adequacy of representation requirement encompasses two factors: '(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *Rosenberg*, 2021 U.S. Dist. LEXIS 210775, at *20. Plaintiff satisfies this test because her interests are squarely aligned with those of the Class because, like the

rest of the Class, Plaintiff alleges that Defendant violated her rights under the FTSA by continuing to send unsolicited text messages after they opted out of further communications.

Further, Plaintiff has no interests antagonistic to those of the Class, understands her role as class representatives, and is willing to devote time and resources to this matter. Indeed, Plaintiff regularly communicates with her attorneys regarding the status of the case. Soto Leigue Dep. at 32:3–11. And she is aware of the claims in her case and the statute under which it was filed, including that it is a state law that prohibits unsolicited text messages. *Id*. at 34:14–35:8. Moreover, Plaintiff has a bachelor's degree in business administration and a minor in economics, she has no arrests or convictions, and has never been charged with a crime. *Id*. at 26:12–14, 30:13–19.

In addition, the firms and counsel representing Plaintiff—Hiraldo P.A., Shamis & Gentile P.A., and Edelsberg Law, P.A—are adequate. All three firms have extensive experience in the areas of consumer rights and class action litigation. *See* Law Firm Resumes. They have litigated multiple cases nationally and have the resources necessary to conduct litigation of this nature. Plaintiff's counsel have been appointed as lead class counsel in numerous cases. Plaintiff's counsel have diligently investigated and dedicated substantial time and financial resources to the investigation and prosecution of the claims at issue and will continue to do so.

### C.    The Rule 23(b)(3) Requirements are Satisfied

#### 1.    *Common Questions Predominate*

An inquiry into the predominance of common questions of law or fact under Fed. R. Civ. P. 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Prindle v. Carrington Mortgage Servs., LLC*, 3:13-CV-1349-J-34PDB, 2016 LEXIS 112881, at \*7 (M.D. Fla. Aug. 24, 2016). Rule 23(b)(3) does not

require all issues presented in the case to be common among the class; it requires only that the common issues predominate over any individual issues. *Klay*, 382 F.3d at 1254 ("it is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions."), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008). Here, it happens to be that all issues are common to the Class.

Common issues predominate if those issues that are subject to generalized proof predominate over those that are subject to individualized proof. *Id.* (citing *Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572, 579 (M.D. Fla. 2006)). Predominance is not defeated simply by showing that the case will require some—or even substantial—individualized inquiry. And, notably, "[t]he 'black letter rule' in every circuit is that "individual damage calculations generally do not defeat a finding that common issues predominate." *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1239 (11th Cir. 2016) (quoting William B. Rubenstein, *Newberg on Class Actions* § 4:54 (5th ed.)); *see also Allapattah Services, Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003), *aff'd sub nom. Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005) (noting that "numerous courts have recognized that the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate" and citing cases).

In this case, the common questions identified above are all subject to class-wide proof. *See Mohamed*, 320 F.R.D. at 316 ("The resolution of each issue will directly impact the resolution of the claims of the modified class and whether each can establish liability against [the defendant] under the TCPA."). Specifically, as discussed above, Plaintiff will prove her FTSA claim and at the same time the FTSA claim of every Class member with common

evidence establishing that Defendant continued to send text messages to Plaintiff and the Class members after they opted out of further communications.

There are no individual issues that predominate. First, issues related to Defendant texting Plaintiff and the putative Class members "can be established through common evidence, namely [Defendants'] business records." *Wesley*, 339 F.R.D. at 297. Second, the text messages Defendant sent to Class members were all sent after opt-out requests. Third, statutory damages will not vary among Class members (and even if they did, as noted above, individual damages calculations do not defeat predominance). Fourth, the Court will be able to rely on common evidence with respect to whether damages should be trebled. And, lastly, there are no unique defenses that Defendant has with respect to Plaintiff or any Class member.

Thus, the questions here will be resolved using common class-wide evidence applicable to all of the claims and will not involve undue individualized questions. *Krakauer*, 925 F.3d at 658-59 (explaining why predominance was satisfied in similar TCPA class action). "At bottom, the advantages of class resolution follow directly from the [] statute. The statute creates a simple scheme for determining if a violation occurred, whether a defense is available, and what the damages ought to be." *Id.*, at 659.

### 2. *A Class Action is Superior*

"When evaluating the superiority inquiry, courts focus on 'whether there is a better method of handling the controversy than through the class action mechanism.'" *Rosenberg*, 2021 U.S. Dist. LEXIS 210775, at *22 (citations omitted). "The most relevant consideration in the superiority analysis is whether class certification would result in case management issues that render the proceedings less fair and efficient than other available forums for adjudicating the class members' claims." *Id.*

Indeed, the Eleventh Circuit has made clear that the superiority inquiry requires a comparison of the superiority of proceeding as a class action as compared to an individual action and has emphasized that "***manageability problems will 'rarely, if ever, be in [themselves] sufficient to prevent certification***'":

> The manageability inquiry focuses on whether a class action "will create relatively more management problems than any of the alternatives," not whether it will create manageability problems in an absolute sense. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1273 (11th Cir. 2004), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008). And the district court must balance its manageability finding against other considerations. Fed. R. Civ. P. 23(b)(3). ***So administrative difficulties—whether in class-member identification or otherwise—do not alone doom a motion for certification. Indeed, we have made clear that manageability problems will "rarely, if ever, be in [themselves] sufficient to prevent certification*.**" *Klay*, 382 F.3d at 1272.

*   *   *

> A district court must evaluate this issue in comparative terms; that is, because the superiority requirement of Rule 23(b)(3) turns on whether a class action is better than other available methods of adjudication, Fed. R. Civ. P. 23(b)(3) it involves two forms of comparison. First, would a class action create more manageability problems than its alternatives? *Klay*, 382 F.3d at 1273. And second, how do the manageability concerns compare with the other advantages or disadvantages of a class action? See id. ***Administrative feasibility alone will rarely, if ever, be dispositive***, id. at 1272–73[.]

*Cherry*, 2021 U.S. App. LEXIS 2809, at *14-15, 17.

Because in this case the amount of damages available to each individual Class member under the FTSA is modest (statutory damages of $1,500 per text, and only $500 per text if the conduct was not willful and knowing), a denial of class certification will effectively result in no one being compensated for Defendant's FTSA violations as no individual would bring a suit to attempt to recover this amount because court costs alone would result in the plaintiff losing money even if they won. Consequently, "[c]lass actions were designed for these types of claims." *G.M. Sign, Inc. v. Grp. C Commc'ns, Inc.*, No. 08-cv-4521, 2010 U.S. Dist. LEXIS

17843, at *16 (N.D. Ill. Feb. 25, 2010) ("Rule 23(b)(3) was designed for situations…in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate."). Moreover, the "prosecution and adjudication of each of these individual claims, rather than disposition of the matter on a class-wide basis, would be judicially inefficient and a waste of this Court's resources." *Mohamed*, 320 F.R.D. at 317.

And although the Eleventh Circuit held in *Cherry* that administrative feasibility should rarely result in denial of class certification, this Court should be satisfied that there are no administrative feasibility issues with respect to providing notice to the Class members or otherwise managing the Class. As it pertains to notice, courts have regularly approved text message notice containing a hyperlink to a website, which constitutes direct notice to Class members. *See Pryke v. First Solar, Inc*., No. 3:21-CV-00681-JGC, 2021 U.S. Dist. LEXIS 208794 (N.D. Ohio Oct. 29, 2021) ("District courts in other circuits have authorized service of the FLSA notice by text message as well as by email and ordinary mail. As one district court reasoned, 'there is no denying that potential plaintiffs are more likely to receive notice of the collective action if a court allows text-message notice, in addition to e-mail and mail.' *Thrower v. UniversalPegasus, Int'l Inc*., 484 F. Supp. 3d 473, 490 (S.D. Tex. 2020)).

This is because even email has become 'saturated and unwieldy,' with people receiving, at times, hundreds of messages daily across various accounts. *Id*. ("A text message, on the other hand, is more likely to grab the recipient's attention. In light of the remedial purpose of the FLSA, many courts have found that notice by text message, in addition to email and U.S. mail, is prudent and appropriate.") (citing *Felps v. Mewbourne Oil Co., Inc*., 460 F. Supp. 3d 1232, 1241 (D.N.M. 2020); *Mahrous v. LKM Enterprises, LLC*, No. CV 16-10141, 2017 U.S. Dist. LEXIS 97918, 2017 WL 2730886, at *4 (E.D. La.); *Bhumithanarn v. 22*

19

*Noodle Mkt. Corp*., No. 14-CV-2625 RJS, 2015 U.S. Dist. LEXIS 90616, 2015 WL 4240985, at *5 (S.D.N.Y.); *Irvine v. Destination Wild Dunes Mgmt., Inc*., 132 F. Supp. 3d 707, 711 (D.S.C. 2015)); *see also Mazariegos v. Pan 4 Am., LLC*, No. DLB-20-2275, 2021 U.S. Dist. LEXIS 208378, at *20 (D. Md. Oct. 28, 2021) (authorizing text message notice to class members); *Young v. Energy Drilling Co*., No. 4:20-cv-1716, 2021 U.S. Dist. LEXIS 76659, at *11 (S.D. Tex. Mar. 31, 2021) ("Furthermore, courts in this district have recognized that email is already outmoded and text messages are more likely to actually reach the intended recipients.") (citing *Dickensheets v. Arc Marine, LLC*, 440 F. Supp. 3d 670, 672 (S.D. Tex. 2020) ("In light of [the reality that text messaging and cell phones are now the primary means of communication] and the overarching goal of providing potential class members the opportunity to join the case, I find that providing notice via text message in addition to other traditional notice methods will almost always be appropriate in modern society.").

Given that Defendant possess telephone numbers, names, emails, and addresses for everyone in the Class, the process of providing notice to the Class members simply requires a class administrator to establish a website containing a long-form notice and relevant case documents, and then send a text message, email, and/or mail notice to each Class member containing a link to website. "At the very least, the proposed process is 'a starting point from which' Plaintiff can use other methods if necessary, such as 'self-identifying affidavits and subpoenas.'" *Scoma Chiropractic, P.A. v. Dental Equities, LLC*, No. 2:16-cv-41-JLB-MRM, 2021 U.S. Dist. LEXIS 245025, at *28 (M.D. Fla. Dec. 23, 2021); *see also Lenorowitz v. Mosquito Squad of Fairfield & Westchester Cty*., No. 3:20-cv-01922 (JBA), 2022 U.S. Dist. LEXIS 170384, at *14 (D. Conn. Sep. 21, 2022) (citations omitted).

20

**WHEREFORE**, for the above reasons, Plaintiff respectfully requests for the Court to grant her Motion and enter an Order certifying the Class, appointing Plaintiff as Class representative, and appointing Plaintiff's counsel and Class Counsel.

## REQUEST FOR HEARING

Plaintiff respectfully submits that this Court would benefit from oral argument on Plaintiff's Motion. Plaintiff estimates that the time required will be one hour.

DATED: February 16, 2023

Respectfully submitted,

**HIRALDO P.A.**

/s/ Manuel S. Hiraldo
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard, Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713

**SHAMIS & GENTILE P.A.**
Andrew J. Shamis, Esq.
Florida Bar No. 101754
ashamis@shamisgentile.com
Garrett O. Berg, Esq.
Florida Bar No. 1000427
gberg@shamisgentile.com
14 NE 1st Ave., Suite 705
Miami, Florida 33132
Telephone: 305-479-2299

**EDELSBERG LAW P.A.**
Scott Edelsberg, Esq.
Florida Bar No. 0100537
Chris Gold, Esq.
Florida Bar No. 88733
20900 NE 30th Ave., Suite 417
Aventura, Florida 33180

Telephone: 305-975-3320
Email: scott@edelsberglaw.com
      chris@edelsberglaw.com

***Counsel for Plaintiff and the Proposed Class***